**No. 26-1348**

———————

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

———————

CITY OF PHILADELPHIA

*Appellee*,

v.

SECRETARY U.S. DEPARTMENT OF INTERIOR; U.S. DEPARTMENT OF INTERIOR; DIRECTOR NATIONAL PARK SERVICE; NATIONAL PARK SERVICE,

*Appellants*.

———————

On Appeal from the February 16, 2026 Memorandum Opinion & Order Granting Appellee's Motion for Preliminary Injunction in Case No. 26-cv-434-CMR in the United States District Court for the Eastern District of Pennsylvania

———————

**BRIEF OF *AMICI CURIAE* MEMBERS OF SENATE DEMOCRATIC CAUCUS OF THE SENATE OF PENNSYLVANIA IN SUPPORT OF APPELLEE'S RESPONSE IN OPPOSITION TO APPELLANT'S MOTION FOR A STAY PENDING APPEAL**

———————

Shannon A. Sollenberger (Pa. 308878)
*Jesse Tomkiewicz (Pa. 334536)
Office of Chief Counsel
Democratic Leader
Senate of Pennsylvania
535 Main Capitol Building
Harrisburg, PA 17120
shannon.sollenberger@pasenate.com
jesse.tomkiewicz@pasenate.com
*Pending application for admission*

*Counsel for Amici Curiae*

**TABLE OF CONTENTS**

                                                                    **Page**

TABLE OF AUTHORITIES.................................................................................... ii

STATEMENT OF IDENTIFICATION OF *AMICI CURIAE* ...................................1

ARGUMENT ........................................................................................................3

   I.   APPELLANTS' BLOCKING PUBLIC ACCESS TO UNCOMFORTABLE HISTORICAL TRUTHS IN THE PANELS UNDERCUTS THE PENNSYLVANIA GENERAL ASSEMBLY'S LONGSTANDING SUPPORT FOR A PERMANENT DISPLAY COMMEMORATING AN ACCURATE AND COMPLETE PORTRAYAL OF SLAVE HISTORY AT THE SITE ...............................................................................................4

  II.  UNDERMINING THE PUBLIC'S TRUST AND THE LOSS OF HISTORICAL TRUTHS ARE IRREPARABLE HARMS THAT, ONCE STOLEN, CANNOT BE RESTORED OR REMEDIED BY THE GOVERNMENT THAT STOLE IT .............................................................11

CONCLUSION ...................................................................................................15

COMBINED CERTIFICATIONS

i

# TABLE OF AUTHORITIES

**Cases**

*City of Philadelphia v. Burgum*, Docket No. 26-434, 2026 WL 431943, at *1 (E.D. Pa. Feb. 16, 2026) .................................................................................... 11, 12, 13

*Freedom from Religion Foundation, Inc. v. Saccone*, 894 F.Supp.2d 573 (M.D. Pa. 2012) .................................................................................................................5

*Regents of Univ. of California v. Bakke,* 438 U.S. 265 (1978).................................14

*Reilly v. City of Harrisburg*, 858 F.3d 173 (3d Cir. 2017) ......................................11

**Federal Legislative Materials**

National Underground Railroad Network to Freedom Act, Pub.L. 105-203, July 21, 1998, 112 Stat. 678, codified at 54 U.S.C. §§ 308301-308304 ...........................2

**State Legislative Materials**

Act of Dec. 22, 2025, P.L. 377, No. 60 .....................................................................7

Act of July 4, 2008, P.L. 329, No. 41, § 6(51)(F7) ...................................................6

Act of July 7, 2025, P.L. 104, No. 30 .......................................................................9

*Commonwealth of Pennsylvania Legislative Journal – Senate*, Session of 2025, 209th General Assembly (Nov. 17, 2025).............................................................8

H.R. 490, 2001-2002 Gen. Assemb., Reg. Sess. (Pa. 2002)..................................5, 6

**State Rules**

101 Pa.Code § 9.42 ..................................................................................................5

**Court Record**

Defendant's Compliance Report, *City of Philadelphia v. Burgum*, Docket No. 26-434, 2026 WL 431943, at *1 (E.D. Pa. Feb. 16, 2026)........................................12

Mtn. for Stay [Doc. No. 8] ...............................................................................12

**Other Authorities**

*An Act for the Gradual Abolition of Slavery – March 1, 1780*, PENNSYLVANIA HISTORICAL & MUSEUM COMMISSION (last visited Feb. 26, 2026), https://www.phmc.state.pa.us/portal/communities/documents/1776-1865/abolition-slavery.html..............................................................................10

Ashley Ahn, *National Park Service Dismantles Slavery Exhibit in Philadelphia*, NEW YORK TIMES (Jan. 22, 2026), https://www.nytimes.com/2026/01/22/us/politics/park-service-philadelphia-slavery-exhibit.html...............................................................................4, 12

Exec. Order No. 14253, 90 Fed. Reg. 14563 (Mar. 27, 2025) ..................... 4, 12, 13

*Heads of Families First Census of the United States: 1790 Pennsylvania*, DEPARTMENT OF COMMERCE AND LABOR BUREAU OF THE CENSUS (published 1908), https://babel.hathitrust.org/cgi/pt?id=uc2.ark:/13960/t09w0rs6v& seq=20.........8

**STATEMENT OF IDENTIFICATION OF *AMICI CURIAE***

*Amici Curiae* are Members of the Democratic Caucus of the Senate of Pennsylvania representing districts spanning the Commonwealth of Pennsylvania. The below named *Amici* represent Senate Districts including the majority of the City of Philadelphia and whose constituencies live and work in the City, where the historical site of the President's House and removed panels depicting slavery and enslaved persons at issue in this case are located.

State Senator Nikil Saval represents the 1st Senate District, that includes part of the City of Philadelphia, and the elected Philadelphia Delegation Chair for the 2025-26 Legislative Session.

State Senator Vincent J. Hughes represents the 7th Senate District, that is, in part, within the boundaries of the City of Philadelphia and Montgomery County, and is the elected Democratic Chair of the Senate Appropriations Committee for the 2025-26 Legislative Session.

State Senator Christine M. Tartaglione represents the 2nd Senate District, that includes part of the City of Philadelphia, and is the elected Democratic Whip for the 2025-26 Legislative Session.

State Senator Anthony H. Williams represents the 8th Senate District, that includes portions of the City of Philadelphia and Delaware County.

1

State Senator Art Haywood represents the 4th Senate District, that is, in part, within the boundaries of the City of Philadelphia.

State Senator Sharif Street represents the 3rd Senate District that includes part of the City of Philadelphia.

Additional *Amici* are listed in Attachment A.

*Amici* have a direct interest and unique perspective regarding the impact of the Court's disposition of Appellants' motion for a stay on its districts. *Amici* not only represent the majority of Philadelphia but also other Senatorial districts including locations, in addition to the President's House, designated as Underground Railroad Network to Freedom sites or facilities pursuant to the National Underground Railroad Network to Freedom Act, Pub.L. 105-203, July 21, 1998, 112 Stat. 678, codified at 54 U.S.C. §§ 308301-308304. *Amici* represent neighborhoods and business communities in the City that would be immediately affected by the loss of tourism due to the removal of the display panels from the President's House site in the Independence National Historic Park. And according to the many pleas from *Amici*'s constituents, this sudden loss of rich history and Defendants' rejection of the true historical narratives about Black history in America is causing irreversible constituent harm and anxiety.

Full restoration of the President's House Site to its January 21, 2026 status and an injunction ensuring that no further changes take place during the pendency

2

of this appeal would help mitigate further harms to our constituents and align with the Pennsylvania General Assembly's longstanding support for the permanent placement of these displays.

Counsel for the parties to this action have consented to the filing of this brief by *Amici*. In accordance with Fed. R. App. 29(a)(4)(E), counsel for *Amici* are wholly responsible for the preparation and submission of this brief and no other party contributed funds or assisted with the preparation or submission of this brief.

## ARGUMENT

This case is not just about whether the federal government can make arbitrary and capricious decisions to ignore existing agreements with the States or their municipalities or the removal of panels. It concerns the profound harm and divisive effect that will result from censoring uncomfortable truths from this nation's history and erasing the contributions of an entire people before the very eyes of our constituents – many of which descend from enslaved persons – only to leave behind a revisionist history. Or, as Appellant better describes it, leave behind "revise[d] interpretive materials" that "align[] with shared national values" – whatever that means. *See* Ashley Ahn, *National Park Service Dismantles Slavery Exhibit in Philadelphia*, NEW YORK TIMES (Jan. 22, 2026), https://www.nytimes.com/2026/01/22/us/politics/park-service-philadelphia-

slavery-exhibit.html (quoting the Department of Interior's statement provided to the New York Times).[1]

In effect, Appellants' actions are antithetical to the last two decades of *Amici*'s legislative support for maintenance of the President's House Site. Undermining public trust and our constituents' loss of historical truth at the Site are irreparable harms that, once stolen, cannot be restored or remedied. If we fail to take action now to restore full access to these historical displays in Philadelphia, those in power will continue to chisel at our American story.

## I. APPELLANTS' BLOCKING PUBLIC ACCESS TO UNCOMFORTABLE HISTORICAL TRUTHS IN THE PANELS UNDERCUTS THE PENNSYLVANIA GENERAL ASSEMBLY'S LONGSTANDING SUPPORT FOR A PERMANENT DISPLAY COMMEMORATING AN ACCURATE AND COMPLETE PORTRAYAL OF SLAVE HISTORY AT THE SITE.

*Amici* and the General Assembly has indicated an intent to support a permanent commemorative display recognizing the history of slavery at the President's House site because of: (1) the passage of House Resolution 490 in 2002 advocating for a commemorative plaque in recognition of the slave quarters

---

[1] The Executive Order lays bare the goal of revisionism in directing Appellant to "take action to reinstate the pre-existing monuments . . ." and "ensure that they do not contain descriptions, depictions, or other content that inappropriately disparage Americans past or living (including persons living in colonial times), and instead focus on the greatness of the achievements and progress of the American people . . . ." Exec. Order No. 14253, 90 Fed. Reg. 14563 (Mar. 27, 2025).

at the President's House; (2) the appropriation of funds to the City of Philadelphia towards the President's House project in 2008; and (3) its recent efforts in support of the upcoming Semiquincentennial celebration, wherein the General Assembly emphasized the importance of telling the *complete* history of the unique contributions made to the founding of the United States by the Commonwealth and *all* Pennsylvanians.

First, in 2002, the Pennsylvania House of Representatives passed House Resolution 490, which "[u]rg[ed] the National Park Service to erect a commemorative plaque in recognition of the slave quarters located on the site of the planned Liberty Bell Pavilion." H.R. 490, 2001-2002 Gen. Assemb., Reg. Sess. (Pa. 2002) ("Resolution") (Exhibit 1). As resolutions are often used by each chamber as a mechanism for carrying out the legitimate business of the General Assembly, this Resolution simply made clear the General Assembly's intent with regard to the history of slavery at this site. *See* 101 Pa.Code § 9.42 (defining a single chamber resolution and common uses thereof); *Cf. Freedom from Religion Foundation, Inc. v. Saccone*, 894 F.Supp.2d 573, 583 (M.D. Pa. 2012) (concluding that resolutions passed by one or both chambers, regardless of whether they are legally binding, serve legitimate public purposes and rise to the level of a "legislative act" falling with the "scope of legislative immunity."). In doing so, the Resolution urged this commemorative plaque because part of the proposed (at that

time) Liberty Bell Pavilion was located at the President's House — the historic site of the residence of Presidents Washington and Adams prior to the construction of the White House.  H.R. 490, 2001-2002 Gen. Assemb., Reg. Sess. (Pa. 2002).

The Resolution observed that the President's House included slave quarters and other complexes.  *Id.*  Given the historical significance of the President's House, including the slave quarters that are inexorably tied to its history, the Resolution urged the National Park service "to facilitate the placement of a permanent commemorative plaque recognizing the site of the slave quarters and to work for continuing recognition of this historic site."  *Id.*  The Pennsylvania House of Representatives transmitted copies of the Resolution to the President of the United States, the National Park Service, the United States Senate, the presiding officers of each house of Congress; each member of Congress from Pennsylvania; and the Mayor of the City of Philadelphia.  *Id.*

Second, in 2008, the General Assembly indicated its intent to support the exhibits when it appropriated $3,500,000 to the City of Philadelphia's funding for the "construction, infrastructure improvements and other costs related to the President's House project."  Act of July 4, 2008, P.L. 329, No. 41, § 6(51)(F7).

Third, the General Assembly indicated its support for the exhibits by its recent contributions to the upcoming celebration of the Semiquincentennial of the United States, wherein the General Assembly emphasized its unequivocal

commitment to recognizing the *complete* history—including the uncomfortable historical truths—of the unique contributions made to the founding of the United States by the Commonwealth and *all* Pennsylvanians.

Last year, in addition to state appropriations of $57,500,000 for 2026 events including the Semiquincentennial, the General Assembly passed Senate Bill 734 (SB 734), which provided for the creation of a "Semiquincentennial Celebration Bell monument on the grounds of the State Capitol to commemorate the 250th anniversary of the founding of the United States, Pennsylvania's integral role in that event and the impact of its people on the nation's *past*, present and future." Act of Dec. 22, 2025, P.L. 377, No. 60 (emphasis added). In support of SB 734, Senator Picozzi, representing the 5th District that includes parts of Philadelphia County, noted:

> Philadelphia is the birthplace of American democracy. It is where our Founders debated and drafted the Constitution and ultimately declared our independence. It is where visionary men and women put enlightened thinking onto paper and turned revolutionary sentiment into a robust republican form of government the world had never seen before. . . . As someone who proudly represents a community deeply rooted in that history, I am honored to support this effort. By installing this bell at our Capitol, we not only pay tribute to our nation's founding, we reaffirm Pennsylvania's place at the center of that legacy and the responsibility we share as its stewards.

*Commonwealth of Pennsylvania Legislative Journal – Senate*, Session of 2025, 209th General Assembly, 1023 (Nov. 17, 2025). As Senator Picozzi notes, when the Founders convened in Philadelphia for the 1787 Constitutional Convention, they drafted the cornerstone of the American experiment in self-government and individual rights as well as one of the most visionary documents in human history.

It is equally important to the communities deeply rooted in that history to recognize the *complete* history of the U.S. Constitution—including the uncomfortable truth that the 1787 U.S. Constitution denied the rights and humanity of enslaved people by: (1) failing to end the institution of slavery, which culminated into the bloodiest conflict on the North American continent—the U.S. Civil War; and (2) adopting the Three-Fifths Compromise, thereby codifying that enslaved people were worth less than free people in determining political power and embedding racial inequality into the nation's highest legal document.

The General Assembly is particularly interested in recognizing this complete history, given that three years after the 1787 Constitutional Convention, the first United States Census in 1790 reported that 3,737 enslaved people resided in this Commonwealth and represented 36% of the Black population of Pennsylvania. *Heads of Families First Census of the United States: 1790 Pennsylvania*, DEPARTMENT OF COMMERCE AND LABOR BUREAU OF THE CENSUS, 8 (published 1908), https://babel.hathitrust.org/cgi/pt?id=uc2.ark:/13960/t09w0rs6v& seq=20.

The General Assembly further indicates its desire for the recognition of the complete history of the contributions made by this Commonwealth and its people to the founding of the United States through its enactment of the "What is Your Pennsylvania Story" Act. Act of July 7, 2025, P.L. 104, No. 30 ("Act"). The Act, which was made "[i]n anticipation of America celebrating 250 years of independence" with the stated purpose of "honor[ing] the contributions of *all* Americans," requires the Pennsylvania Department of Education to develop materials and make them available to school entities for inclusion in social studies instruction. *Id.* § 3(a), (c) (emphasis added). Specifically, the Act notes that the materials may include, *inter alia*, "resources that educate students . . . through stories that students relay about who the[y] . . . are and how their families weave into the Pennsylvania and United States experience" as well as "[e]ducational aids that provide student with information on the historical experiences of the inhabitants of this Commonwealth, including their experiences arriving in this Commonwealth." *Id.* § 3(c)(1), (3).

Certainly, the General Assembly anticipated that its students would tell and its school entities would explain certain uncomfortable truths regarding the history of slavery in the Commonwealth. The Pennsylvania Historical & Museum Commission recognizes the uncomfortable truth that "[t]he enslavement of African servants has a long and dishonorable history in Pennsylvania." *An Act for the*

9

*Gradual Abolition of Slavery – March 1, 1780*, PENNSYLVANIA HISTORICAL &
MUSEUM COMMISSION (last visited Feb. 26, 2026),
https://www.phmc.state.pa.us/portal/communities/documents/1776-1865/abolition-
slavery.html.  Prior to William Penn receiving his charter to the province in 1681,
Dutch and Swedish settlers in the Delaware Valley held Africans as slaves.  *Id.*
Even William Penn himself owned slaves upon arrival to the province in the early
1680s.  *Id.*  Because it is impossible for Pennsylvania students and school entities
to tell the history of the Commonwealth without confronting these uncomfortable
truths, the passage of the Act clearly indicates the General Assembly's desire to
tell the entirety of the Commonwealth's history as it relates to the founding of the
United States.

Accordingly, the General Assembly indicates its support for the slavery
exhibits at the President's House site because of House Resolution 490 supporting
a plaque memorializing the slave quarters at the President's House, the
appropriation of funds to the City of Philadelphia to be used towards the
President's House project, and its recent efforts in support of the upcoming
Semiquincentennial celebration.

**II. UNDERMINING THE PUBLIC'S TRUST AND THE LOSS OF HISTORICAL TRUTHS ARE IRREPARABLE HARMS THAT, ONCE STOLEN, CANNOT BE RESTORED OR REMEDIED BY THE GOVERNMENT THAT STOLE IT.**

Appellant's actions have sown distrust amongst the public, cherrypicked which facts and whose stories are worth telling, and wasted years of Appellee's and *Amici*'s time and public funds dedicated to securing and celebrating *all* of America's history.  Appellants argue the district court erred in granting the injunction because, in part, these harms do not establish irreparable harm.  Mtn. for Stay at 22. [Doc. No. 8].  Appellant is wrong.

The Appellee demonstrated that it is "more likely than not" to suffer irreparable harm absent a preliminary injunction.  *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017).  Irreparable harm cannot be adequately remedied after-the-fact by money damages, and it must be "immediate" as opposed to occurring sometime in the indefinite future.  Here, the district court held that the Appellee established just that.  *City of Philadelphia v. Burgum*, Docket No. 26-434, 2026 WL 431943, at *17 (E.D. Pa. Feb. 16, 2026) (Recognizing Appellee's alleged harms as irreparable: "[A] loss of access to historical truth, an undermining of the public trust, and an inability to recount its own story in preparation for the semiquincentennial").

Appellee already spent millions of dollars, including *Amici*'s aforementioned appropriations, and decades of "multilateral collaboration" through multiple elected local, state and federal governments and organizations in order to maintain these interpretive displays. *Id.* at *18. All that investment withstood decades only to be yanked away on January 22nd because suddenly the interpretive displays do not align with some unidentified judge of what constitutes "shared national values" or adequately "focus[es] on the greatness of the achievements and progress of the American people." *See id.* at *18; *see also* Ahn, *supra*, and Exec. Order No. 14253, 90 Fed. Reg. 14563 (Mar. 27, 2025) ("Exec. Order No. 14253"). What is more, our Pennsylvania constituents, not only those living in Philadelphia, continue to share stories with *Amici* of their own harms – psychological, educational, lack of public access to historical information – as result of the removal of and damage to these displays.

This is not mere conjecture or speculation. Mtn. for Stay at 23 [Doc. No. 8]. Appellant admitted in its status report to the district court on February 20th that one of the panels sustained damage to three of its four mounting bolts requiring repair. Defendant's Compliance Report at 3 para. 13, *City of Philadelphia v. Burgum*, Docket No. 26-434, 2026 WL 431943, at *1 (E.D. Pa. Feb. 16, 2026). And the district court warned of even more damage to come: "[T]he remaining displays and memorials at the President's House would likely sustain damage if removed.

They are etched in concrete or preserved within a glass structure, such that removal would result in irreparable harm to the integrity of the site." *City of Philadelphia*, 2026 WL 431943, at *19. If this Court grants Appellants' motion for a stay, nothing stands in the way of further removal or damage of the remaining displays until resolution of this appeal.

Finally, just as the district court concluded, these displays are a memorial to the persons who lived, worked and died as enslaved people in America. Their existence is not negotiable. The facts of their lives are not amendable. They did, in fact, contribute to "the progress of the American people . . . ." Exec. Order No. 14253.

The district court put it best: The panels are "an enduring reminder of the inherent contradictions emanating from this country's founding. Each person who visits the President's House and does not learn of the realities of founding-era slavery receives a false account of this country's history." *City of Philadelphia*, 2026 WL 431943, at *18. There is no remedy for these irreparable harms but for a full injunction pending the resolution of this case.

At bottom, *Amici* are alarmed with Appellants' censorship and plans to revise American history at the President's House Site by surgically cutting out any historical truths the government may find uncomfortable in the interpretive panels. Historians, authors and judges warned us of its consequences. Yet here we are.

And so, we urge this Court to heed the words of the first Black U.S. Supreme

Court Justice Thurgood Marshall, when writing separately in *Regents of the*

*University of California v. Bakke,* that the failure of our nation to recognize and

learn from its history of slavery will only sow further division:

> For it must be remembered that, during most of the past
> 200 years, the Constitution, as interpreted by this Court,
> did not prohibit the most ingenious and pervasive forms of
> discrimination against the Negro. . . . The position of the
> Negro today in America is the tragic but inevitable
> consequence of centuries of unequal treatment. . . . The
> relationship between those figures and the history of
> unequal treatment afforded to the Negro cannot be denied.
> At every point from birth to death the impact of the past is
> reflected in the still disfavored position of the Negro. . . .
> In light of the sorry history of discrimination and its
> devastating impact on the lives of Negroes, bringing the
> Negro into the mainstream of American life should be a
> state interest of the highest order. To fail to do so is to
> ensure that America will forever remain a divided society.

*Regents of Univ. of California v. Bakke,* 438 U.S. 265, 387-96 (1978) (internal

citations omitted) (Justice Marshall reviews the history of African Americans in

American history to support his conclusion that the U.S. Supreme Court should

uphold affirmative action policies in college admissions).

In brief, lack of full public access to these panels undermines the General

Assembly's longstanding support for a complete, accurate portrayal of history at

the President's House Site and the resulting harms to the public trust and historical

truth are irreparable. As Justice Marshall asserted, we must learn from the past –

including the many uncomfortable truths – or we are doomed to ignorance and division.

## CONCLUSION

Based on the foregoing reasons, we urge the Court to deny Appellants' Motion for a Stay Pending Appeal.

Respectfully submitted,

/s/ *Shannon A. Sollenberger*____
Shannon A. Sollenberger (Pa. 308878 )
*Jesse Tomkiewicz (Pa. 334536)
Senate Democratic Caucus
Senate of Pennsylvania
Room 535 Main Capitol Building
Harrisburg, PA 17120
(717) 787-7683
shannon.sollenberger@pasenate.com
jesse.tomkiewicz@pasenate.com

*Pending application for admission*

Dated: February 27, 2026

# COMBINED CERTIFICATIONS OF COUNSEL

1. <u>Bar Membership</u>: I am a member of the bar od this Court.

2. <u>Word Count</u>: The undersigned certifies that this brief uses a proportionally spaced, 14-point Times New Roman typefact, and that it complies with the type-volume limit of Fed. R. App. P. 29(a)(5) because, excluding the parts of the document exempted by Fed. R. App. 32(f), this brief contains 3,214 words.

3. <u>Service</u>: The undersigned certifies that she will serve this brief by the Court's electronic filing system on the date below on counsel of record here.

4. <u>Identical Text</u>: The undersigned certifies that the text of the electronically-filed brief is identical to the text of the 7 hard copies that will be delivered within 5 days of this electronic filing to the Clerk of the Court.

5. <u>Virus Check</u>: The undersigned certifies that virus detection was run on this file and that the program detected no virus.

<u>/s/  *Shannon A. Sollenberger*____</u>
Shannon A. Sollenberger (Pa. 308878)
Chief Counsel
Senate Democratic Caucus Members
Senate of Pennsylvania
Room 535 Main Capitol Building
Harrisburg, PA 17120
(717) 787-7683
shannon.sollenberger@pasenate.com

*Attorney for Amici Curiae*

Dated: February 27, 2026

# Attachment A

## Additional Amici Curiae

Senator Jay Costa
Senator Maria Collett
Senator Steven J. Santarsiero
Senator Judy Schwank
Senator Nick Miller
Senator Lisa Boscola
Senator Amanda Cappelletti
Senator Carolyn Comitta
Senator Marty Flynn
Senator Wayne Fontana
Senator John Kane
Senator Timothy P. Kearney
Senator Patty Kim
Senator Andrew Malone
Senator Katie Muth
Senator Nick Pisciottano
Senator Lindsay M. Williams

# EXHIBIT 1

THE GENERAL ASSEMBLY OF PENNSYLVANIA

# HOUSE RESOLUTION
## No. 490 Session of 2002

INTRODUCED BY HORSEY, YOUNGBLOOD, WASHINGTON, CRUZ, JAMES, BISHOP, D. EVANS, MYERS, KIRKLAND, ROEBUCK, OLIVER, PRESTON, ROBINSON, THOMAS, WATERS AND J. WILLIAMS, MARCH 26, 2002

INTRODUCED AS NONCONTROVERSIAL RESOLUTION UNDER RULE 35, MARCH 26, 2002

A RESOLUTION

Urging the National Park Service to erect a commemorative plaque in recognition of the history of the slave quarters located on the site of the planned Liberty Bell Pavilion.

WHEREAS, A portion of the proposed location of the planned Liberty Bell Pavilion in Philadelphia is located on the historic site of the residence of United States Presidents George Washington and John Adams prior to the construction of the White House in Washington, D.C.; and

WHEREAS, This property, referred to as the President's House, included other complexes such as slave quarters and icehouses; and

WHEREAS, The land previously occupied by the slave quarters will be partially covered by the newly built facility; and

WHEREAS, The Liberty Bell is recognized as a symbol of the American Revolution; and

WHEREAS, The Liberty Bell became famous when abolitionists fighting to rid the nation of slavery adopted it as their

symbol; and

WHEREAS, The inscription on the Liberty Bell became the rally cry for opponents of slavery; and

WHEREAS, It is important to maintain a permanent acknowledgment of the rich history of the affected area, especially the history associated with the slave quarters; therefore be it

RESOLVED, That the House of Representatives of the Commonwealth of Pennsylvania urge the National Park Service to facilitate the placement of a permanent commemorative plaque recognizing the site of the slave quarters and to work for continuing recognition of this historic site; and be it further

RESOLVED, That copies of this resolution be transmitted to the President of the United States, the National Park Service, the United States Senate, the presiding officers of each house of Congress, each member of Congress from Pennsylvania and the Mayor of the City of Philadelphia.