# No. 26-1348

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

CITY OF PHILADELPHIA,

*Appellee,*

*v.*

Secretary U.S. Department of Interior; U.S. Department of Interior; Director National Park Service; National Park Service,

*Appellants.*

On Appeal from the February 16, 2026 Memorandum Opinion & Order Granting Appellee's Motion for Preliminary Injunction in Case No. 26-cv-434-CMR in the United States District Court for the Eastern District of Pennsylvania

## REPLY IN SUPPORT OF APPELLANTS' MOTION FOR A STAY PENDING APPEAL

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

MICHAEL VELCHIK
Senior Counsel to the Assistant
Attorney General

DAVID METCALF
United States Attorney

GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division

GREGORY B. IN DEN BERKEN
Assistant United States Attorney

TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................... 1

ARGUMENT ........................................................................................... 3

I. The Government Will Likely Prevail ................................................... 3

    A. The City Lacks Standing or a Viable Claim ............................... 3

    B. The City Failed to Establish Irreparable Harm ......................... 8

II. The Equities Support a Stay ................................................................ 9

CONCLUSION ...................................................................................... 11

COMBINED CERTIFICATIONS ............................................................. 13

## INTRODUCTION

The City of Philadelphia's stay opposition confirms that it cannot establish standing or a viable claim for the mandatory injunction that it obtained—and that a stay of the injunction is warranted. At the preliminary-injunction stage, the City must clearly show—with evidence—that it is *likely* to establish standing. *See, e.g.*, *Murthy v. Missouri*, 603 U.S. 43, 58 (2024). The City failed to do that before the district court and its opposition here does not fix that fundamental problem. Instead, the City largely relies on the district court's opinion and its amended complaint—which only underscores the problem because mere allegations cannot satisfy the City's burden at this stage.

On the merits, the City's opposition confirms that it lacks a viable claim. The City's sole substantive answer to the Government's statutory argument about 16 U.S.C. § 407n is that "Independence Hall National Historic Site"—Independence Square—was "subsumed" into the Park. It contends that this historical development somehow expanded a textually narrow consent right over the Site into a broad right over the entire Park. But "every statute's *meaning* is fixed at the time of enactment." *Wisconsin Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018). And § 407n's text distinguishes the Site from the Park—and limits any right of mutual

agreement to the Site. The City's "scope-expands-with-time" theory cannot be reconciled with that language or with fundamental principles of statutory interpretation. And because the City's requests for relief and the district court's injunction are inextricably based on that flawed premise, the injunction cannot stand on *any* count.

On standing, the City falls back on generalized assertions of injury—"public benefit," tourism, past expenditures, and an asserted interest in "honestly tell[ing] its own history." But the City has no evidence for those injuries that satisfies traceability and redressability, and it fails to reckon with the Government's arguments that the City has no statutory or contractual rights over the President's House or the exhibits. The City thus lacks standing and fails to show a likelihood of success on the merits.

The City also failed to establish irreparable harm. Its principal claim—that "[e]very moment" the President's House remains in its "current state" denies the City's asserted interest in "honest and accurate commemoration"—is vague, subjective, and unsupported by authority or record evidence showing a concrete, time-sensitive injury. So the City has not shown that it warrants immediate and mandatory relief.

Finally, the equities favor a stay. The injunction intrudes on the Government's exclusive statutory authority to administer the Park and

compels the Government to display and operate expressive exhibits on Federal property notwithstanding the Government's decision not to do so. Government-speech principles confirm that a government entity "has the right to speak for itself," is "entitled to say what it wishes," and may "select the views that it wants to express." *Pleasant Grove City v. Summum*, 555 U.S. 460, 467-68 (2009) (cleaned up).

The Court should continue its stay of the injunction pending this appeal.

## ARGUMENT

### I. The Government Will Likely Prevail

#### A. The City Lacks Standing or a Viable Claim

The City lacks standing and fails to show a likelihood of success on the merits.

*First*, the City is incorrect that it has standing based on "the injury to *its* property interest, *its* public fisc, and *its* tourism." Opp. at 8. As an initial matter, the City's citation of its amended complaint (at 9) for these allegations undermines the notion that it established standing. Because this appeal arises "[a]t the preliminary injunction stage," the City was required to "make a 'clear showing'" that it was "'likely' to establish each element of standing." *Murthy v. Missouri*, 603 U.S. 43, 58 (2024)

3

(quoting *Winter v. Nat. Res. Defense Council, Inc.*, 555 U.S. 7, 22 (2008)). That requires *evidence*; "mere allegations will not support standing at the preliminary injunction stage." *Doe v. Nat'l Bd. of Med. Examiners*, 199 F.3d 146, 152 (3d Cir. 1999).

Although the City cannot at this stage rely on its amended complaint to establish standing, the injuries it now claims must be alleged in the amended complaint. But they are not (*see* Mot. at 20-22); the record does not establish the tourism injury; the expenditures on the project are neither traceable to the removal of the exhibits nor redressable in this case; and the City's "ability to honestly tell its own history" remains unimpaired. So the district court's conclusions about these injuries, *see* ADD19-20, are not warranted by the evidence.

Because the City has no rights with respect to the President's House, it cannot rely on injuries to its property interest, its public fisc, and its tourism. *See* Mot. at 8-14; *see also Burke v. City of Charleston*, 139 F.3d 401, 406 (4th Cir. 1998) (artist who sold mural lacked standing to challenge ordinance restricting display of mural); *Serra v. U.S. Gen. Servs. Admin.*, 847 F.2d 1045, 1049 (2d Cir. 1988) (artist who "relinquished his own speech rights in [a] sculpture when he voluntarily sold it to GSA" thus could not object to its removal from a given location on public property). And

there is no evidence to support the City's assertion that the Government acted "contrary to . . . 80 years of cooperation." Indeed, one of the City's three witnesses—who served as chief of staff to the mayor for seven years—could not recall any collaborative endeavors between the City and NPS other than the President's House project. ADD241:8-12; ADD243:17-21.

The City also argues (at 10-11) that it asserts more than a mere procedural violation here, but its argument concedes the Government's point. The Government's motion explains (at 8-11) that 16 U.S.C. § 407n and the 1950 Agreement are inapplicable to the President's House, but acknowledges (at 12) that one provision of the 1950 Agreement—Article III(e)—includes a "pledge . . . to consult on all matters of importance to the program." ADD80. As the Government notes in its motion (at 12), that vague pledge by itself cannot provide standing. *See, e.g.*, *Spokeo, Inc. v. Robins*, 578 U.S. 330, 342 (2016) ("a bare procedural violation" without any associated harm does not provide standing); *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("deprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing"). In response, the City contends that it alleges more than a mere procedural harm in the form of "the violation of the City's codified, limited property right to control the President's House jointly with

Defendants." Opp. at 10. But that's exactly the Government's point: the City needs more than a mere violation of the procedural pledge in Article III(e) to the 1950 Agreement to establish standing.

*Second*, for similar and overlapping reasons, the City fails to establish a likelihood of success on the merits.

As the Government's motion explains, the City's entire case is based on fundamental misinterpretations of the relevant contracts and 16 U.S.C. § 407n. In response, the City asserts that the Government's motion "substantively addresses only *one* (Count III) of the City's four claims" and thus "functionally conced[es]" the district court's holdings as to three other claims. Opp. at 7; *see also* 12-13. The Government made no such concession, but it does not matter in any event. The Government's stay motion challenges the premise that the City has a statutory or contractual right of mutual agreement for changes to the President's House (or the Park)—because the City's requests for relief and the district court's injunction are inextricably based on that premise.

The district court's opinion explains that the injunction is predicated on the notion that it restores "the status quo as of January 21, 2026, which requires that Defendants reinstall all panels, displays, and video exhibits that were previously in place" and allegedly would bar the Government

from "any additions, removals, destruction, or further changes of any kind to the President's House site, except in the event that a mutual written agreement is reached between Defendants and the City of Philadelphia." ADD42. But that was not the status quo, and the City has no statutory or contractual right of mutual agreement. So without that premise, the injunction cannot stand on *any* count.

The City's sole substantive response to the Government's statutory interpretation of 16 U.S.C. § 407n is unpersuasive. According to the City, the "Independence Hall National Historic Site" referenced in § 407n (Independence Square) was over time "subsumed into the amalgam that became the Park," and this somehow expanded the City's narrow statutory right over the Site to an expansive right over the whole Park. Opp. at 15-17.

That theory has no basis in the statute and flouts fundamental principles of statutory interpretation. The City points out (at 15) that 16 U.S.C. § 407m authorized the Secretary of the Interior to acquire certain *other* properties and provided that the Park would not be established until the Secretary determined that enough land had been acquired. But that has no bearing on the meaning of the term "Independence Hall National Historic Site" in § 407n. The City also says that Article III(i) of the 1950 Agreement supports its interpretation because that provision allegedly

7

shows "that the Historic Site designation was transitional." Opp. at 15-16. But Article III(i) merely terminated the parties' then-existing agreement about the Site. It had no effect on Interior's designation of the Site, *see* 8 Fed. Reg. 7283 (dated May 14, 1943; published June 1, 1943), and necessarily could not affect the meaning of the statutory definition. And the notion that the term "Independence Hall National Historic Site" in § 407n has a far broader meaning now than when it was enacted contravenes the fundamental principle that "every statute's *meaning* is fixed at the time of enactment." *Wisconsin Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018); *see Essintial Enter. Sols., LLC v. United States Small Bus. Admin.*, 166 F.4th 380, 384 (3d Cir. 2026) ("we look to the ordinary, contemporary, common public meaning of the words at issue at the time the law was passed" (cleaned up)).

### B. The City Lacks Standing or a Viable Claim

The Government will also likely prevail because the City failed to satisfy its burden to show irreparable harm.

To warrant the extraordinary remedy of a preliminary injunction, a movant cannot rely on a "generalized claim of harm" but must show a substantial injury that is truly "irreparable" as supported by record evidence—not conjecture or rhetoric. *Del. State Sportsmen's Ass'n, Inc. v.*

8

*Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 205 (3d Cir. 2024) (cleaned up). Here, the City argues that it has such an injury because "[e]very moment that the President's House remains in its current state, the City is denied its interest in the honest and accurate commemoration and representation of *its* history and role in our shared *national* history." Opp. at 21. The City offers no legal authority to support its suggestion that such a vague subjective harm qualifies as irreparable. But it also falls short as a factual matter: The City has ample communication channels, resources, and property that it can use to promote whatever aspect of its history that it chooses. And the City's ability to do so is unaffected by the condition of the President's House.

**II.    The Equities Support a Stay**

Finally, the equities support staying the injunction here.

The district court's interpretation of § 407n vastly expands the City's authority over the Park and infringes on the Government's exclusive authority over the Park as provided by 16 U.S.C. § 407q and its exclusive authority over the National Park System under the Organic Act, 54 U.S.C. §§ 100101 *et seq*. That is irreparable harm. *See, e.g.*, *INS v. Legalization Assistance Project of Los Angeles Cnty. Fed'n of Lab.*, 510 U.S. 1301, 1306 (1993) (O'Connor, J., in chambers) (holding that equities favored the

9

Government where the underlying order was "an improper intrusion by a federal court into the workings of a coordinate branch of the Government"). The injunction also improperly compels the Federal Government to speak when it has chosen not to. The Government "is entitled to say what it wishes," *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 833 (1995), may ensure "that its message is neither garbled nor distorted," *id.*, and—like any other speaker—may decide "what not to say," *Pac. Gas & Elec. Co. v. Pub. Utilities Comm'n of California*, 475 U.S. 1, 16 (1986) (plurality opinion). Interference with those speech rights inflicts irreparable harm. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976).

The City offers no meaningful response on the harm caused by the infringement of the Government's authority, but argues that the Government failed to prove that the injunction compels it to speak and that such compulsion is permissible with respect to the Federal Government. Opp. at 17-20. Of course an order requiring the display of a particular monument on Federal property is compelled speech. *See, e.g.*, *Pleasant Grove City v. Summum*, 555 U.S. 460, 470 (2009) ("Permanent monuments displayed on public property typically represent government speech."). The City also suggests that the Government had to show its "disagreement with the message of the displays" to establish a compelled-

speech problem here, Opp. at 18, but that is not the law. Compelled speech is no less compelled just because the speaker agrees with the content of the speech. What's more, the Government's decision to *remove the exhibits* establishes that it does not wish to endorse the message.

Regardless of whether the right is rooted in the First Amendment, "[a] government entity has the right to speak for itself" and is "entitled to say what it wishes" and "to select the views that it wants to express." *Summum*, 555 U.S. 467-68 (cleaned up). The injunction violates that right and the City's indeterminate harm does not outweigh the significant harms to the Government.

## CONCLUSION

The Court should continue its stay of the injunction pending this appeal.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

MICHAEL VELCHIK
Senior Counsel to the
Assistant Attorney General

DAVID METCALF
United States Attorney

*/s/ Gregory B. David*
GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division

/s/ *Gregory B. in den Berken*
GREGORY B. IN DEN BERKEN
Assistant United States Attorney
Eastern District of Pennsylvania
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
Phone: (215) 861-8200
Email: gregory.indenberken@usdoj.gov

March 6, 2026

## COMBINED CERTIFICATIONS

Pursuant to Federal Rule of Appellate Procedure 32(g)(1) and Local Appellate Rules 27.3 and 113.4, I certify that:

1. This reply complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 2,333 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f).

2. This reply complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 27(d)(1)(E) because this reply has been prepared in a proportionally spaced typeface in 14-point Georgia font using Microsoft Word for Microsoft 365.

3. On March 6, 2026, I filed this reply via the Court's CM/ECF system and thus served the reply on all parties' counsel registered to receive electronic notices.

Dated: March 6, 2026              */s/ Gregory B. in den Berken*
                                                          Gregory B. in den Berken