**No. 26-1348**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT**

_____

CITY OF PHILADELPHIA

*Appellee*,

v.

SECRETARY U.S. DEPARTMENT OF INTERIOR; U.S. DEPARTMENT OF
INTERIOR; DIRECTOR NATIONAL PARK SERVICE; NATIONAL PARK
SERVICE,

*Appellants*.

_____

On Appeal from the February 16, 2026 Memorandum Opinion & Order Granting
Appellee's Motion for Preliminary Injunction in Case No. 26-cv-434-CMR in the
United States District Court for the Eastern District of Pennsylvania (Honorable
Cynthia M. Rufe)

_____

**BRIEF OF *AMICI CURIAE* MEMBERS OF SENATE DEMOCRATIC
CAUCUS OF THE SENATE OF PENNSYLVANIA IN SUPPORT OF
APPELLEE**

_____

Shannon A. Sollenberger (Pa. 308878)
Jesse Tomkiewicz (Pa. 334536)
Office of Chief Counsel
Democratic Leader
Senate of Pennsylvania
535 Main Capitol Building
Harrisburg, PA 17120
shannon.sollenberger@pasenate.com
jesse.tomkiewicz@pasenate.com

*Counsel for Amici Curiae*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES................................................................................... ii

STATEMENT OF *AMICI* IDENTIFICATION.......................................................1

INTRODUCTION ..................................................................................................1

ARGUMENT ..........................................................................................................2

I. *AMICI* AND THE GENERAL ASSEMBLY WILL BE HARMED
ABSENTA PRELIMINARY INJUNCTION BECAUSE APPELLANTS'
REMOVAL OF THE EXHIBITS CONTRAVENES *AMICI* AND THE
GENERAL ASSEMBLY'S LONGSTANDING LEGISLATIVE AND
FINANCIAL SUPPORT FOR A PERMANENT DISPLAY
COMMEMORATING HISTORY, ESPECIALLY THAT ASSOCIATED
WITH THE SLAVE QUARTERS, AT THE PRESIDENT'S HOUSE
SITE .........................................................................................................5

II. *AMICI* AND THE GENERAL ASSEMBLY WILL BE HARMED
ABSENT A PRELIMINARY INJUNCTION BECAUSE OUR
LEGISLATIVE EFFORTS SUPPORTING THE UPCOMING HISTORIC
SEMIQUINCENTENNIAL CELEBRATION DEMONSTRATE OUR
UNEQUIVOCAL COMMITMENT TO TELLING THE ENTIRE
HISTORY OF OUR NATION, COMMONWEALTH, AND *ALL* OF ITS
CONSTITUENTS PAST AND PRESENT—INCLUDING THE
UNCOMFORTABLE TRUTHS APPELLANTS MAY FIND
"DISPARAGING."....................................................................................7

III. THE ERASURE OF BLACK HISTORY FROM THE PUBLIC SQUARE
AND DEPRIVATION OF HISTORICAL TRUTH FROM OUR
CONSTITUENTS IS AN ONGOING, PECULIAR, AND IRREPARABLE
HARM, PARTICULARLY IN LIGHT OF THE UPCOMING
SEMIQUINCENTENNIAL CELEBRATION ...........................................13

CONCLUSION ...................................................................................................17

COMBINED CERTIFICATIONS

**Cases**

*City of Philadelphia v. Burgum*, 2026 WL 431943 (E.D. Pa. Feb. 16, 2026)..........17
*Del. River Port Auth. v. Transamerican Trailer Transport, Inc.*, 501 F.2d 917 (3d Cir. 1974)....................................................................................................4
*ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223 (3d Cir. 1987)....................................14
*Freedom from Religion Foundation, Inc. v. Saccone*, 894 F.Supp.2d 573 (M.D. Pa. 2012) ..........................................................................................................6
*Regents of Univ. of California v. Bakke*, 438 U.S. 265 (1978)..............................17
*Reilly v. City of Harrisburg*, 858 F.3d 173 (3d Cir. 2017) ...................................4
*Siemens USA Holdings, Inc v. Geisenberger*, 17 F.4th 393 (3d Cir. 2021) ...........14

**Constitutional Provisions and Statutes**

Act of Dec. 22, 2025, P.L. 377, No. 60 ................................................................8
Act of July 4, 2008, P.L. 329, No. 41, § 6(51)(F7) ..............................................7
Act. Act of July 7, 2025, P.L. 104, No. 30 ..................................................... 10, 11

**Regulations**

101 Pa. Code § 9.42 ............................................................................................6
Fed. R. App. 29(a)(4)(E)......................................................................................2

**Other Authorities**

*An Act for the Gradual Abolition of Slavery – March 1, 1780*, PENNSYLVANIA HISTORICAL & MUSEUM COMMISSION (last visited Feb. 26, 2026), https://www.phmc.state.pa.us/portal/communities/documents/1776-1865/abolition slavery.html ..................................................................................11
*Congressional Involvement in the Celebration of Anniversaries of the Declaration of Independence*, CONGRESS (last updated Dec. 12, 2025), https://www.congress.gov/ crs_external_products/R/HTML/R48473.web.html 16
*Founders' Quotes on Slavery*, Bill of Rights Institute, https://billofrightsinstitute.org/activities/handout-i-founders-quotes-on-slavery/ (last visited Apr. 20, 2026) ..............................................................................9
Frederick Douglass, *What to the Slave is the Fourth of July?* (July 5, 1852), https://loveman.sdsu.edu/docs/1852FrederickDouglass.pdf ................................3
*Heads of Families First Census of the United States: 1790 Pennsylvania*, DEPARTMENT OF COMMERCE AND LABOR BUREAU OF THE CENSUS, 8 (published

1908), https://babel.hathitrust.org/cgi/pt?id=uc2.ark:/13960/t09w0rs6v& seq=20. ..............................................................................................................12

*Social Studies Field Trip*, National Park Service, https://home.nps.gov/inde/planyourvisit/itineraries-socialstudiesfieldtrips.htm (last accessed Apr. 23, 2026)....................................................................13

**Federal Legislative Materials**

Exec. Order No. 14253, 90 Fed. Reg. 14563 (Mar. 27, 2025) .................................4

**State Legislative Materials**

*Commonwealth of Pennsylvania Legislative Journal – Senate*, Session of 2025, 209th General Assembly, 1023 (Nov. 17, 2025).....................................................8

H.R. 490, 2001-2002 Gen. Assemb., Reg. Sess. (Pa. 2002).....................................6

**Court Record**

ECF No. 36, at 15..................................................................................................15

# STATEMENT OF *AMICI* IDENTIFICATION

*Amici Curiae* are Members of the Democratic Caucus of the Senate of Pennsylvania representing districts spanning the Commonwealth of Pennsylvania. The below named *Amici* represent State Senate Districts including the majority of the City of Philadelphia and whose constituencies live and work in the City, where the historical site of the President's House and removed panels depicting slavery and enslaved persons at issue in this case are located.

State Senator Nikil Saval represents the 1st Senate District, including part of the City of Philadelphia, and is the elected Philadelphia Delegation Chair for the 2025-26 Legislative Session.

State Senator Vincent J. Hughes represents the 7th Senate District that is, in part, within the boundaries of the City of Philadelphia and Montgomery County, and is the elected Democratic Chair of the Senate Appropriations Committee for the 2025-26 Legislative Session.

State Senator Christine M. Tartaglione represents the 2nd Senate District, including part of the City of Philadelphia, and is the elected Democratic Whip for the 2025-26 Legislative Session.

State Senator Anthony H. Williams represents the 8th Senate District including portions of the City of Philadelphia and Delaware County.

1

State Senator Art Haywood represents the 4th Senate District that is, in part, within the boundaries of the City of Philadelphia.

State Senator Sharif Street represents the 3rd Senate District that includes part of the City of Philadelphia.

Additional *Amici* are listed in Attachment A.

*Amici* have a direct interest as representatives of the communities and businesses immediately impacted by Appellants' acts and the relief delivered by the district court's preliminary injunction. According to the many pleas from *Amici*'s constituents, it is not just the loss of tourism due to the removal of the panels but also the Appellants' sudden clamor to reject the true historical narratives about Black history in America that is causing irreversible constituent harm and anxiety.

Counsel for the parties to this action consented to *Amici's* filing of this brief. In accordance with Fed. R. App. 29(a)(4)(E), counsel for *Amici* are wholly responsible for the preparation and submission of this brief and no other party contributed funds or assisted with the preparation or submission of this brief.

## INTRODUCTION

As we prepare to celebrate the Semiquincentennial—more specifically, the signing of the Declaration of Independence in Philadelphia 250 years ago—we have a moral obligation to acknowledge the paradox of liberty and slavery in the founding of our nation.

As Frederick Douglass stressed in his famous *What to the Slave is the Fourth of July?(1852)* speech, the "Declaration of Independence is the ringbolt to the chain of [this] nation's destiny," the principles contained within it are "saving principles" worthy of defense "at whatever cost," and its signers "were statesmen, patriots and heroes." Frederick Douglass, *What to the Slave is the Fourth of July?* (July 5, 1852), https://loveman.sdsu.edu/docs/1852FrederickDouglass.pdf. In the same speech, Douglass faulted America—rightfully so—for its betrayal of those values by maintaining the institution of slavery:

> What, to the American slave, is your 4th of July? I answer: a day that reveals to him, more than all other days in the year, the gross injustice and cruelty to which he is the constant victim. To him, your celebration is a sham; . . . your shouts of liberty and equality . . . are, to him, mere bombast, fraud deception, impiety, and hypocrisy.

*Id.* Douglass's speech eloquently exposed the paradoxical nature of our founding and serves as a reminder that history must be viewed through the lenses of *all* who lived it or else it will suffer the fate of a deficient, monolithic narrative that is incapable of capturing the complexities of the human experience.

Our constituents—many of whom descend from enslaved people—deserve to have their unique perspective of our nation's founding displayed in the public square, especially as we approach this historic Semiquincentennial. As painful as telling the whole truth can be, it is undoubtedly more harmful for our society to live without it. Accordingly, *Amici* submits this brief in support of the City of

Philadelphia and the district court's preliminary injunction and, more importantly, in support of telling the *complete* truth regarding the President's House—even if that truth may, as President Trump put it, "disparage Americans past or living." Exec. Order No. 14253, 90 Fed. Reg. 14563 (Mar. 27, 2025).

## ARGUMENT

As this Court articulated in *Reilly*, a moving party seeking to obtain a preliminary injunction must show:

> (1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured . . . if relief is not granted. . . . [In addition,] the district court, in considering whether to grant a preliminary injunction, should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest.

*Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017) (quoting *Del. River Port Auth. v. Transamerican Trailer Transport, Inc.*, 501 F.2d 917, 919–20 (3d Cir. 1974)).  To avoid inundating the Court with duplicated arguments and instead focus upon *Amici*'s unique perspective, this brief will concentrate on the second, third, and fourth factors.

*Amici* requests that this Court uphold the district court's preliminary injunction and, when reviewing the four factors of a preliminary injunction, take note that the removal of the exhibits:  (1) harms *Amici* and the General Assembly by undermining its longstanding political and financial support for an accurate and complete portrayal of the historical truth at the President's House; (2) harms *Amici*

4

and the General Assembly by subverting its recent, unequivocal commitment to telling the complete history of our nation, Commonwealth, and constituents; and (3) irreparably harms the public and our constituents by erasing Black history from the public square and depriving the public of historical truths in the months leading up to this historic Semiquincentennial. This harm cannot be restored or remedied absent a preliminary injunction.

I. ***AMICI* AND THE GENERAL ASSEMBLY WILL BE HARMED ABSENT A PRELIMINARY INJUNCTION BECAUSE APPELLANTS' REMOVAL OF THE EXHIBITS CONTRAVENES *AMICI* AND THE GENERAL ASSEMBLY'S LONGSTANDING LEGISLATIVE AND FINANCIAL SUPPORT FOR A PERMANENT DISPLAY COMMEMORATING HISTORY, ESPECIALLY THAT ASSOCIATED WITH THE SLAVE QUARTERS, AT THE PRESIDENT'S HOUSE SITE.**

*Amici* and the General Assembly have indicated an intent to support a permanent commemorative display recognizing the history of slavery at the President's House site because of: (1) the passage of House Resolution 490 in 2002 advocating for a commemorative plaque in recognition of the slave quarters at the President's House; and (2) the appropriation of funds to the City of Philadelphia towards the President's House project in 2008.

In 2002, the Pennsylvania House of Representatives passed House Resolution 490, which "[u]rg[ed] the National Park Service to facilitate the placement of a permanent commemorative plaque recognizing the site of the slave quarters and to work for continuing recognition of this historic site." H.R. 490, 2001-2002 Gen.

Assemb., Reg. Sess. (Pa. 2002) ("Resolution") (Exhibit 1). The Resolution urged this commemorative plaque because part of the proposed (at that time) Liberty Bell Pavilion was located directly over the foundations of the President's House—the historic site of the residence of Presidents Washington and Adams, and enslaved people residing in the slave quarters, prior to the construction of the White House. H.R. 490, 2001-2002 Gen. Assemb., Reg. Sess. (Pa. 2002). Additionally, the Resolution recognized that "[i]t is important to maintain a permanent acknowledgment of the rich history of the affected area, especially the history associated with the slave quarters." *Id.* The Pennsylvania House of Representatives transmitted copies of the Resolution to the President of the United States, the National Park Service, the United States Senate, the presiding officers of each house of Congress; each member of Congress from Pennsylvania; and the Mayor of the City of Philadelphia. *Id.*

As resolutions are often used by each chamber as a mechanism for carrying out the legitimate business of the General Assembly, this Resolution made clear the General Assembly's intent with regard to the history of slavery at this site. *See* 101 Pa. Code § 9.42 (defining a single chamber resolution and common uses thereof); *Cf. Freedom from Religion Foundation, Inc. v. Saccone*, 894 F.Supp.2d 573, 583 (M.D. Pa. 2012) (concluding that resolutions passed by one or both chambers, regardless of whether they are legally binding, serve legitimate public purposes and

6

rise to the level of a "legislative act" falling within the "scope of legislative immunity.").

Subsequently, in 2008, the General Assembly further indicated its intent to support the exhibits when it appropriated $3,500,000 to the City of Philadelphia for the "construction, infrastructure improvements and other costs related to the President's House project." Act of July 4, 2008, P.L. 329, No. 41, § 6(51)(F7). This significant appropriation, four years after the 2004 Resolution, clearly denotes the General Assembly's intent to have the exhibits in their rightful place at the President's House. Accordingly, *Amici* and the General Assembly will be harmed absent a preliminary injunction because the removal of the exhibits undermines its longstanding legislative and financial support for the exhibits.

## II. *AMICI* AND THE GENERAL ASSEMBLY WILL BE HARMED ABSENT A PRELIMINARY INJUNCTION BECAUSE OUR LEGISLATIVE EFFORTS SUPPORTING THE UPCOMING HISTORIC SEMIQUINCENTENNIAL CELEBRATION DEMONSTRATE OUR UNEQUIVOCAL COMMITMENT TO TELLING THE ENTIRE HISTORY OF OUR NATION, COMMONWEALTH, AND *ALL* OF ITS CONSTITUENTS PAST AND PRESENT—INCLUDING THE UNCOMFORTABLE TRUTHS APPELLANTS MAY FIND "DISPARAGING."

*Amici* and the General Assembly have demonstrated unwavering support for the exhibits through recent legislative efforts towards the upcoming celebration of the Semiquincentennial, including: (1) Senate Bill 734, which provided for a Semiquincentennial Celebration Bell monument on the grounds of the State Capitol

to commemorate, *inter alia*, the historical impact of the people of this Commonwealth on the nation's past; and (2) the "What is Your Pennsylvania Story" Act, wherein student are encouraged to share, and teachers are encouraged to teach, the history of all who have resided in this Commonwealth.

Last year, in addition to state appropriations of $57,500,000 for 2026 events including the Semiquincentennial, the General Assembly passed Senate Bill 734 (SB 734), which provided for the creation of a "Semiquincentennial Celebration Bell monument on the grounds of the State Capitol to commemorate the 250th anniversary of the founding of the United States, Pennsylvania's integral role in that event and the **impact of its people on the nation's past**, present and future." Act of Dec. 22, 2025, P.L. 377, No. 60 (emphasis added). In support of SB 734, Senator Picozzi, representing the 5th Senatorial District that includes parts of Philadelphia County, noted:

> Philadelphia is the birthplace of American democracy. It is where our Founders debated and drafted the Constitution and ultimately declared our independence. It is where visionary men and women put enlightened thinking onto paper and turned revolutionary sentiment into a robust republican form of government the world had never seen before. . . . As someone who proudly represents a community deeply rooted in that history, I am honored to support this effort. By installing this bell at our Capitol, we not only pay tribute to our nation's founding, we reaffirm Pennsylvania's place at the center of that legacy and the responsibility we share as its stewards.

*Commonwealth of Pennsylvania Legislative Journal – Senate*, Session of 2025, 209th General Assembly, 1023 (Nov. 17, 2025). As Senator Picozzi recognized,

Philadelphia is the birthplace of American democracy because it is where Thomas Jefferson penned the Declaration of Independence 250 years ago and where the Founders ratified the U.S. Constitution in 1787. These documents are the cornerstones of the American experiment in self-government and among the most important documents ever drafted in human history.

However, it is equally important to the communities deeply rooted in that history that we recognize the complete, unedited history of those cornerstone documents. For example, in Thomas Jefferson's *first draft* of the Declaration of Independence he denounced slavery and admonished King George III for his role in its perpetuation, explaining that:

> [King George III] has waged cruel war against human nature itself, violating its most sacred rights of life and liberty in the persons of a distant people who never offended him, captivating and carrying them into slavery in another hemisphere, or to incur miserable death in their transportation hither. . . . Determined to keep open a market where MEN should be bought and sold, he has prostituted his negative for suppressing every legislative attempt to prohibit or restrain this execrable commerce.

*Founders' Quotes on Slavery*, Bill of Rights Institute, https://billofrightsinstitute.org/activities/handout-i-founders-quotes-on-slavery/ (last visited Apr. 20, 2026). Of course, this express contempt of the injustice of slavery never made it into the final draft of the Declaration of Independence. Additionally, we must recognize the uncomfortable truth that the 1787 U.S. Constitution denied the rights and humanity of enslaved people by: (1) failing to

end the institution of slavery; and (2) adopting the Three--Fifths Compromise, thereby codifying that enslaved people were worth less than free people in determining political power and embedding racial inequality into the nation's highest legal document. The "impact of [our people] on the nation's past" cannot be properly accounted for absent acknowledgment of these historical truths. Accordingly, SB 734 represents *Amici* and the General Assembly's commitment to ensuring that the impact of *all* our people—including those descended from enslaved people—on the nation's past is recognized, especially in the months leading to the Semiquincentennial.

The General Assembly further indicates its desire for the recognition of the complete history of the contributions made by this Commonwealth and *all* its people to the founding of the United States through its enactment of the "What is Your Pennsylvania Story" Act. Act of July 7, 2025, P.L. 104, No. 30 ("Act"). The Act, which was made "[i]n anticipation of America celebrating 250 years of independence" with the stated purpose of "honor[ing] the contributions of all Americans," requires the Pennsylvania Department of Education to develop materials and make them available to school entities for inclusion in social studies instruction. *Id.* § 3(a), (c) (emphasis added). Specifically, the Act notes that the materials may include, *inter alia*, "resources that educate students . . . through stories that students relay about who the[y] . . . are and **how their families weave into the**

**Pennsylvania and United States experience**" as well as "[e]ducational aids that provide student with information on the **historical experiences of the inhabitants of this Commonwealth**, including their experiences arriving in this Commonwealth." *Id.* § 3(c)(1), (3) (emphasis added).

Certainly, the General Assembly anticipated that its students would tell, and its schools would explain, certain uncomfortable truths regarding the history of slavery in the Commonwealth. It is yet another uncomfortable truth that "[t]he enslavement of African servants has a long and dishonorable history in Pennsylvania." *An Act for the Gradual Abolition of Slavery – March 1, 1780*, PENNSYLVANIA HISTORICAL & MUSEUM COMMISSION (last visited Feb. 26, 2026), https://www.phmc.state.pa.us/portal/communities/documents/1776-1865/abolition slavery.html. Prior to William Penn receiving his charter to the province in 1681, Dutch and Swedish settlers in the Delaware Valley held Africans as slaves. *Id.* Even William Penn himself owned enslaved people upon arrival to the province in the early 1680s. *Id.*

Notably, on March 1, 1780, a decade before Philadelphia became the capital of the U.S., the General Assembly passed the Gradual Abolition Act in the Pennsylvania State House (now known as Independence Hall), which freed every enslaved person born in the Commonwealth upon reaching age 28 and "was the first such legislative enactment in America." *Id.* However, despite this legislation, a

decade later (and three years after the 1787 Constitutional Convention) the first United States Census in 1790 reported that 3,737 enslaved people still resided in this Commonwealth and represented 36% of the Black population of Pennsylvania. *Heads of Families First Census of the United States: 1790 Pennsylvania*, DEPARTMENT OF COMMERCE AND LABOR BUREAU OF THE CENSUS, 8 (published 1908), https://babel.hathitrust.org/cgi/pt?id=uc2.ark:/13960/t09w0rs6v& seq=20.

Thus, the history of this Commonwealth wrestles with the same paradox of liberty and slavery. As much as this Commonwealth may take pride in its commitment to religious liberty at its founding, it also must reconcile its relationship with slavery. The "What is Your Pennsylvania Story" Act clearly encourages these important discussions amongst our students and teachers, and our constituents, many of whom descend from enslaved persons, deserve to have their stories heard.

*Amici* struggles to reconcile how its students are encouraged to tell, and its teachers are encouraged to teach, the historical experiences of *all* the Commonwealth's inhabitants (including those descended from enslaved persons), yet Appellants find such discussion too "disparag[ing] to Americans past" to permit it in the public square 250 years after the founding of our nation. Even more perplexing is the fact that the National Park Service still has a website dedicated to "help with trip planning and on-site logistics" for social studies classes and provides an itinerary of historical sites to visit—including the "President's House Site Exhibit

– Freedom and Slavery in the Making of a New Nation." *Social Studies Field Trip*, National Park Service, https://home.nps.gov/inde/planyourvisit/itineraries-socialstudiesfieldtrips.htm (last accessed Apr. 23, 2026). Oddly enough, the National Park Service describes the President's House Site as an "outdoor exhibit present[ing] personal stories of freedom and slavery in President Washington's household" and encourages students to "[l]ook for the foundations of the house, and find the footprints symbolizing one woman's journey to freedom." *Id*.

Because it is impossible for Pennsylvania students and school entities to tell the history of the Commonwealth without confronting these uncomfortable truths, the passage of the Act clearly indicates the General Assembly's desire to tell the entirety of the Commonwealth's history as it relates to the founding of the United States. Accordingly, the General Assembly's unequivocal commitment to telling the complete history of our nation, Commonwealth, and constituents—in light of the upcoming Semiquincentennial celebration—runs counter to the dismantling of the exhibits at the President's House.

**III. THE ERASURE OF BLACK HISTORY FROM THE PUBLIC SQUARE AND DEPRIVATION OF HISTORICAL TRUTH FROM OUR CONSTITUENTS IS AN ONGOING, PECULIAR, AND IRREPARABLE HARM, PARTICULARLY IN LIGHT OF THE UPCOMING SEMIQUINCENTENNIAL CELEBRATION.**

The erasure of Black history from the public square, and the deprivation of historical truth from our constituents (which *Amici* largely shares with the City), is an ongoing, peculiar, and irreparable harm of such a degree that it cannot be atoned for with monetary compensation or by the replacement of the exhibits at some indefinite time. This is especially true as the City approaches its Semiquincentennial celebration. Upholding the district court's preliminary injunction is immediately necessary to end the harm caused to our constituents.

This Court has explained that "[t]he law . . . is clear in this Circuit: In order to demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The preliminary injunction must be the only way of protecting the plaintiff from harm" and "[t]he 'requisite feared injury or harm must be irreparable—not merely seriously or substantial' and it 'must be of **a peculiar nature, so that compensation in money cannot atone for it.**'" *Siemens USA Holdings, Inc v. Geisenberger*, 17 F.4th 393, 407-08 (3d Cir. 2021) (quoting *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987)) (emphasis added).

Appellants contend that there is no irreparable harm here because "[t]he exhibits were securely stored, replaceable at modest cost, and capable of reinstallation" and that any other harm claimed by the City is "too indeterminate, derivate of harm to the public . . . or remediable after final judgment." ECF No. 36, at 15. Appellants' summation of the harm is astonishingly insensitive to the harm caused to our constituents by the removal of the exhibits and ignores the context of the once-in-a-generation Semiquincentennial celebration.

Appellants assume that because, in its view, the exhibits are capable of reinstallation and/or replacement, there is "no harm no foul" by the removal of the exhibits. This is a shallow contention that ignores massive investments of time and money and, more importantly, the harm our constituents will face by the erasure of Black history. As explained *supra*, *Amici* and the General Assembly have invested millions of dollars in the President's House exhibit, as has the City. Moreover, the movement to get the President's House exhibit operational took decades of multilateral collaboration between local, state, and federal governments and other organizations—all of which to be washed away because the exhibits may "disparage Americans" from the past. While *Amici* acknowledges the President's grave concern for disparaging Americans that are *no longer alive*, *Amici* maintains that the removal of these exhibits deprives the public of its right to access historical truths and actively disparages the *descendants of enslaved people here today*. Indeed, our constituents

15

(including those inside and outside of Philadelphia) continue to share stories with *Amici* of their own harms—psychological, educational, and lack of access to historical information—resulting from the erasure of this history.  The indefinite, future prospect of replacing or reinstalling the exhibits cannot possibly remedy the harm our constituents will suffer every day from the exclusion of the exhibits from the public square.

Moreover, the upcoming once-in-a-generation Semiquincentennial celebration adds an additional degree of urgency to replacing the exhibits.  The United States has only had four milestone celebrations in its history—a 50th anniversary in 1826, the centennial in 1876, sesquicentennial in 1926, and the bicentennial in 1976.  *Congressional Involvement in the Celebration of Anniversaries of the Declaration of Independence*, CONGRESS (last updated Dec. 12, 2025), https://www.congress.gov/ crs_external_products/R/HTML/R48473.web.html.  Thus, the Semiquincentennial is a once-in-a-generation celebration that is poised to increase visibility of the City and its iconic historical landmarks—including the President's House.  It would be a tragedy for our constituents (many of whom reside within the City), domestic and international tourists, and students visiting the City on field trips to witness the erasure of Black history from the public square.  As the district court succinctly explained, the panels are "an enduring reminder of the inherent contradiction

16

emanating from this country's founding. Each person who visits the President's House and does not learn of the realities of founding-era slavery receives a false account of this country's history." *City of Philadelphia v. Burgum*, 2026 WL 431943, at *18 (E.D. Pa. Feb. 16, 2026). For that reason, an irreparable harm will be suffered by our constituents if the district court's preliminary injunction is not upheld in full.

## CONCLUSION

And so, we urge this Court to heed the words of the first Black U.S. Supreme Court Justice Thurgood Marshall who, when writing separately in *Regents of the University of California v. Bakke*, recognized that the failure of our nation to recognize and learn from its history of slavery will only sow further division:

> For it must be remembered that, during most of the past 200 years, the Constitution, as interpreted by this Court, did not prohibit the most ingenious and pervasive forms of discrimination against the Negro. . . . The position of the Negro today in America is the tragic but inevitable consequence of centuries of unequal treatment. . . . The relationship between those figures and the history of unequal treatment afforded to the Negro cannot be denied. At every point from birth to death the impact of the past is reflected in the still disfavored position of the Negro. . . . In light of the sorry history of discrimination and its devastating impact on the lives of Negroes, bringing the Negro into the mainstream of American life should be a state interest of the highest order. To fail to do so is to ensure that America will forever remain a divided society.

*Regents of Univ. of California v. Bakke*, 438 U.S. 265, 387-96 (1978) (Marshall, J., concurring and dissenting) (internal citations omitted).

The continued exclusion of the exhibits from the President's House will:  (1) undermine *Amici* and the General Assembly's longstanding legislative and financial support for the exhibits; (2) subvert *Amici* and the General Assembly's recent, unequivocal support to telling the complete history of our nation, Commonwealth, and  all of it constituents through recent legislative efforts in support of the upcoming Semiquincentennial celebration; and (3) irreparably harm our constituents by erasing Black history from the public square and depriving our constituents from historical truth, especially in the months leading to the Semiquincentennial celebration.

Accordingly, *Amici* requests that this Court uphold the district court's permanent injunction in its entirety.

Respectfully submitted,

/s/  *Jesse Tomkiewicz*
Jesse Tomkiewicz (Pa. 334536)
Shannon A. Sollenberger (Pa. 308878)
Senate Democratic Caucus
Senate of Pennsylvania
Room 535 Main Capitol Building
Harrisburg, PA 17120
(717) 787-7683
shannon.sollenberger@pasenate.com
jesse.tomkiewicz@pasenate.com

Dated: April 27, 2026

## COMBINED CERTIFICATIONS OF COUNSEL

1. <u>Bar Membership</u>: I am a member of the bar of this Court.

2. <u>Word Count</u>: The undersigned certifies that this brief uses a proportionally spaced, 14-point Times New Roman typeface, and that it complies with the type-volume limit of Fed. R. App. P. 29(a)(5) because, excluding the parts of the document exempted by Fed. R. App. 32(f), this brief contains 4,010 words.

3. <u>Service</u>: The undersigned certifies that she will serve this brief by the Court's electronic filing system on the date below on counsel of record here.

4. <u>Identical Text</u>: The undersigned certifies that the text of the electronically-filed brief is identical to the text of the 7 hard copies that will be delivered within 5 days of this electronic filing to the Clerk of the Court.

5. <u>Virus Check</u>: The undersigned certifies that virus detection was run on this file and that the program detected no virus.

<u>/s/  *Shannon A. Sollenberger*</u>
Shannon A. Sollenberger (Pa. 308878)
Chief Counsel
Senate Democratic Caucus Members
Senate of Pennsylvania
Room 535 Main Capitol Building
Harrisburg, PA 17120
(717) 787-7683
shannon.sollenberger@pasenate.com

*Attorney for Amici Curiae*

Dated: April 27, 2026

# Attachment A

## Additional Amici Curiae

Senator Jay Costa
Senator Maria Collett
Senator Steven J. Santarsiero
Senator Judy Schwank
Senator Nick Miller
Senator Lisa Boscola
Senator Amanda Cappelletti
Senator Carolyn Comitta
Senator Marty Flynn
Senator Wayne Fontana
Senator John Kane
Senator Timothy P. Kearney
Senator Patty Kim
Senator Andrew Malone
Senator Katie Muth
Senator Nick Pisciottano
Senator Lindsay M. Williams